## USHER v. UNITED STATES.
### No. 5298.

Circuit Court of Appeals, Fourth Circuit.

Nov. 13, 1944.

William H. Smith, of Florence, S. C. (J. E. Dudley, of Bennettsville, S. C., on the brief), for appellant.

W. Carroll Hunter, Sp. Asst. to Atty. Gen., and Henry H. Edens, Asst. U. S. Atty., of Columbia, S. C. (Wendell Berge, Asst. Atty. Gen., Claud N. Sapp, U. S. Atty., of Columbia, S. C., J. Stephen Doyle, Jr., Sp. Asst. to Atty. Gen., and Katherine A. Markwell, Atty., Dept. of Agriculture, of Washington, D. C., on the brief), for appellee.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an action brought in the District Court of the United States for the Eastern

District of South Carolina, by the appellee, United States of America, here referred to as the plaintiff, against the appellant, John Usher, here referred to as the defendant, for the purpose of collecting penalties on certain cotton alleged to have been grown by the defendant over and above his allotment and sold by him without the payment of a penalty. Another object of the suit was the forcing of the defendant to file with the County Agricultural Conservation Committee of Marlboro County, South Carolina, a farm operator's account on form "Cotton 417" for the marketing year 1941–1942. The summons and complaint were filed in May, 1943. An answer was filed by the defendant denying the material allegations of the complaint and alleging that the cotton had not been sold.

The cause was tried before a jury in April, 1944, at Florence, South Carolina. The plaintiff did not contend for the enforcement of the filing of the form above mentioned and the issue was wholly as to the penalty claimed by the plaintiff.

After the conclusion of the evidence, taken on behalf of the plaintiff, defendant moved for a non-suit or dismissal of the action and moved for a directed verdict at the conclusion of the taking of all the evidence. Both motions were denied by the court below.

The jury brought in a verdict against the defendant in the sum of $2,621.29. A motion was then made on behalf of the defendant for a new trial, which was denied, and judgment was entered in favor of the plaintiff for the amount of the verdict with costs. From this action this appeal was brought.

The defendant owns and operates a farm in Marlboro County, South Carolina, upon which cotton is produced by him and his sharecroppers. An acreage allotment of 113 acres with a normal yield of 347 pounds per acre was established for defendant's farm for the 1941 crop of cotton. The planted acreage for this crop was 227 acres, with a total production of 165 bales, amounting to 76,658 pounds. The actual yield per acre was 337.7 pounds. The cotton was ginned during the period August through November 1941, and the production of cotton is taken from the reports of ginners to the Government. The farm marketing quota was 39,211 pounds, consisting of an amount of cotton equal to the normal production of the acreage allotment, which was higher than the actual production.

The excess cotton available for marketing consisted of 81 bales, amounting to 37,447 pounds, upon which the penalty, at the rate of seven cents a pound, at the time of any marketing prior to the expiration of quotas on July 31, 1943, would be $2,621.29. The quota and the excess were apportioned among the defendant and his sharecroppers upon the basis of their respective interests in the acreage planted to cotton and, in accordance with this apportionment, the marketing penalty would be $1,825.67 for the defendant and $795.62 for the sharecroppers.

A single red marketing card, accompanied by forms of marketing certificates in triplicate, was issued to defendant, as operator of the farm, in respect to all cotton produced by him and his sharecroppers in consequence of which the defendant became liable for all penalties. Marketing certificates, executed by the defendant and his buyers and furnished by the latter to the Government, indicate the disposition by sale during the period August through December 1941 of 84 bales of cotton, amounting to 39,029 pounds, constituting all but 182 pounds of the quota cotton.

The defendant, although requested to do so in writing and in person, failed and refused to file with the county committee a farm operator's report of the disposition of his 1941 crop of cotton, and also refused to permit inspection of such of the cotton as had not been regularly sold as aforesaid or documents evidencing title thereto.

Among others, two main questions are raised on this appeal by the defendant. First, that the court should have held that the Government had to prove its case beyond a reasonable doubt instead of by a preponderance of the evidence. Second, whether the presumption created by the regulation issued by the Secretary of Agriculture as authorized by the Agricultural Adjustment Act of 1938, as amended, 52 Stat. 31, as amended, 7 U.S.C.A. § 1281 et seq., was lawful?

Pertinent parts of the regulation read as follows:

"Inspection of unmarketed cotton.—If the county committee has reason to believe that any cotton reported by any producer to be unmarketed has in fact been marketed, or if the committee has reason to believe that the records cannot be properly completed otherwise, such committee shall provide for the inspection of such producer's cotton or of documents evidencing ti-

tle thereto, by one or more of its members or one of its officers or employees or any person duly designated as a representative of the Secretary of Agriculture. If, upon the basis of such inspection, the county committee finds that all or part of the cotton reported by such producer as unmarketed is not in the actual or constructive possession of the producer, or if the producer fails or refuses to permit the inspection of his cotton or of documents evidencing title thereto, the amount of the producer's cotton which the county committee finds the producer has not reported as having been marketed, less the amount of such producer's cotton which such committee finds to be in the actual or constructive possession of such producer, shall be presumed to have been marketed."

■■ On the first question, we are of the opinion that the judge below was correct in holding the action to be a civil one and not criminal and that it was only necessary for the plaintiff to prove its case by a preponderance of the evidence rather than beyond a reasonable doubt. The object of the Act and the Regulation was to prevent an over-production of cotton. It was not a crime to produce cotton in excess of the allotment, but if there was such over-production the penalty was imposed, not as a punishment for a crime but, to prevent over-production of the commodity. The grower was at liberty to produce all the cotton he wished to produce provided this penalty was complied with. The penalty differs from an ordinary penalty which is imposed in connection with the commission of an unlawful act. It is significant, in illustration of the peculiar nature of the penalty, that the administrative regulations provide that the penalty may be prepaid, deposited in escrow, or secured, by the producer. It clearly follows that the action here is a civil and not a criminal one and that the plaintiff had only to carry the burden of proof to the satisfaction of the jury. United States v. Regan, 232 U.S. 37, 34 S. Ct. 213, 58 L.Ed. 494. Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917. In the latter case will be found a full discussion of the principle involved in the collection of a penalty of this character. There the Supreme Court held, that only a preponderance of the evidence was necessary to establish the plaintiff's case in an action to recover such a penalty.

The authorities relied upon on behalf of the defendant on this point grow out of a different state of facts from that existing here and are not controlling.

■ On the second question it is not necessary to quote authorities to the effect that Congress had the power to pass the Act and to authorize the Secretary of Agriculture to issue regulations under it. That the regulations here in question were clearly within the authority of the Act and therefore lawful cannot be doubted. The presumption raised under the regulation is a reasonable one and therefore lawful.

■ There was a conflict in the evidence but it is undisputed that the defendant refused to obey the authority in charge of the enforcement of the Act although he himself had previously been a member of the County Committee in charge of the enforcement; that he refused to permit inspection of the excess cotton raised by him in the 1941 crop and refused to give any information as to the whereabouts of the cotton, where it was stored or what had become of it. He also refused to make the proper reports required to be made by a grower or producer of cotton. The regulation with regard to the penalty for raising excess cotton was done away with in July, 1943, and at the trial the defendant claimed he marketed the excess cotton of the 1941 crop after the abolishment of the quota regulation.

There is a sharp conflict in the evidence as to when the defendant marketed this cotton; evidence was offered in contradiction of the defendant's statement that it was stored in a barn on his farm and the presumption raised by the regulation clearly justified by the defendant's action in refusing inspection or examination by the Government investigators would justify the jury in disbelieving the defendant's story as to the disposal made of the excess cotton.

■ A number of points are raised on behalf of the defendant with regard to the charge of the judge to the jury, but a careful examination of that charge shows that there was no harmful error committed by the court below and that the objections made are not substantial. It was also contended that because there is a provision in the statute that when excess cotton is sold the buyer should deduct the penalty from the price and remit it to the Government, the producer is relieved of the penalty. It is clear that such an effort to collect the penalty does not relieve the producer from

paying the penalty when it is not collected by the buyer.

Certain objections are also made to the exclusion of testimony offered on behalf of the defendant but we find these objections are not worthy of serious discussion.

The actions of the defendant throughout the whole transaction were such as to lead to the inescapable conclusion that the defendant had sold his cotton before the lifting of the quota provision in July, 1943.

There was ample evidence to support the verdict of the jury, there was no error in the trial and a study of the record leads us to the conclusion that the jury reached the proper verdict.

The judgment of the court below is accordingly affirmed.

Affirmed.