869 F.2d 594
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Valerie JORDAN, Plaintiff-Appellant,
v.
Richard JUHNKE and Valerie Juhnke, Defendants-Appellees.
 No. 87-1747.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 3, 1988.
Decided: Feb. 3, 1989.
 
 Peter Louis Sissman, for appellant.
 Deborah Ann Vitale (Jacobi & Miller, on brief), for appellees.
 Before WIDENER, MURNAGHAN and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 This unfortunate case is between a mother, Valerie Jordan, on the one hand, and her daughter, Valerie Juhnke, and the daughter's husband, Richard Juhnke, on the other. It concerns the disposition of the property of a family friend, one Olga Peterson. A jury found that the property turned over to or delivered to the daughter belonged to the daughter, and we affirm.
 
 
 2
 Olga Peterson was a longtime friend of the Jordan family. She had been friends with Mrs. Jordan since their school days. Miss Peterson did not marry, and, not unnaturally, developed quite an affection for Mrs. Jordan's daughter, Mrs. Juhnke, which affection was returned. Miss Peterson was very nearly a part of the Jordan family. For example, she was included in family holiday activities without invitation.
 
 
 3
 In November 1985, Miss Peterson learned that she had cancer and that she was terminally ill. She had worked for more than thirty years in New York City and had accumulated substantial savings. Upon learning of her illness and that it was terminal, she decided to dispose of her estate during her lifetime. She engaged an attorney to prepare a power of attorney, by virtue of which she disposed of substantially everything she owned. The power of attorney was executed in favor of Mrs. Jordan, and, on the directions of Miss Peterson, Mrs. Jordan transferred to her daughter, Mrs. Juhnke, some $90,000 in bank deposits, Mrs. Jordan retaining some $9700 thereof, which she transferred to her maiden name. The possession of substantially all of Miss Peterson's tangible personal property, consisting of jewelry and furniture, was also transferred to Mrs. Juhnke except one item which went to Mr. Juhnke.
 
 
 4
 While these events were transpiring, Miss Peterson executed two wills, the first in favor of Mrs. Juhnke, and the second, executed after all the money and property of Miss Peterson had been disposed of, in favor of Mrs. Jordan.
 
 
 5
 During this period of time, Miss Peterson also saw to it that Mrs. Jordan would get her life insurance benefits in the amount of $5,000 and her pension fund which was in excess of $60,000. So Miss Peterson effectively disposed of all of her estate during her lifetime, and neither of the wills mentioned above has been admitted to probate, nor has any claim been made in this case by virtue thereof.
 
 
 6
 On this state of facts, following the death of Miss Peterson, the mother, Mrs. Jordan, sued the daughter, Mrs. Juhnke, claiming that the money and property turned over to the daughter and delivered to her had been simply turned over to the daughter to keep for the mother. The theory of the case was stated as conversion, constructive fraud, and breach of fiduciary duty.[1] The daughter, Mrs. Juhnke, filed a counterclaim against her mother, making substantially the same allegations. Whatever the truth of the various allegations and theories of the case may be, the district court correctly got to the heart of the controversy as it charged the jury, without objection, as follows:
 
 
 7
 Those are the issues you ladies and gentlemen are going to have to decide. You're going to have to decide who Olga Peterson gave this money to. There is conflict in the testimony as to whether it was given to Valerie Jordan, whether it was given to Valerie Juhnke.
 
 
 8
 On this instruction, the jury returned a verdict in favor of the daughter on the principal claim and also in favor of the daughter on her counterclaim. The district court set aside the verdict on the counterclaim, and that action is not appealed. So, the only question before us is the validity of the judgment in favor of the defendant daughter on the principal claim in the case.
 
 
 9
 The principal argument of Mrs. Jordan on appeal is that the district court did not charge the jury that, since her daughter claimed to have taken by gift, any such gift would have to have been proven by clear and convincing evidence, rather than by a preponderance of the evidence. The argument goes that the law is the same in New York, Miss Peterson's and Mrs. Jordan's domicile, and in Virginia, the site of the immediate controversy, and the residence of the daughter. She relies on In re Garrett, 45 B.R. 190 (B.R.Ct.E.D.Va.1984), and Gruen v. Gruen, 496 N.E.2d 869 (N.Y.1986). Without deciding whether New York or Virginia law would apply, or even if that principle is applicable in a proper case, it has no application here. The district court correctly understood the case to be that each party claimed that Olga Peterson had given the items in dispute to her, the only question being to whom the gifts were made, the mother or the daughter. So, the question in the case, as we have related above, framed by the instructions of the district court, was to whom the gift was made, not whether a gift was made. Since this is a civil case, the standard is proof by a preponderance of the evidence, Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 50 (1971); Usher v. United States, 146 F.2d 369, 371 (4th Cir.1944), as the district court correctly charged the jury.
 
 
 10
 The other claims of error of Mrs. Jordan are largely with respect to admissibility of evidence and removal of issues from the jury. We have considered each of them and are of opinion they are without merit.
 
 
 11
 We think the district court correctly understood the case and submitted it to the jury on the theory we have outlined above. The verdict of the jury was quite justified by the evidence in the case.
 
 
 12
 The judgment of the district court is accordingly
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 The theory of both the complaint and the counterclaim was stated in the jury instructions to be "conversion, constructive fraud, and breach of fiduciary duty." "And" is omitted from the counterclaim instruction