# IN THE COURT OF APPEALS OF IOWA

No. 15-0742
Filed June 29, 2016

**JUDY KNOER, LINDA KOPPIE, CAROLYN LARSEN,
and KATHY HIATT, Executor of the Estate of GLEN MOSER,**
    Plaintiff-Appellants,

**vs.**

**PALO ALTO COUNTY BOARD OF SUPERVISORS,**
    Defendant-Appellee.

_____

        Appeal from the Iowa District Court for Palo Alto County, Don E. Courtney,

Judge.


        Landowners appeal the district court's grant of summary judgment in their

mandamus action against the county board of supervisors.  **AFFIRMED.**



        Eric J. Eide of the Law Office of Eric J. Eide, P.L.C., Fort Dodge, and

Dennis L. Knoer of Briggs and Morgan, P.A., Minneapolis, Minnesota, for

appellant.

        Robert W. Goodwin of Goodwin Law Office, P.C., Ames, for appellee.


        Considered by Tabor, P.J., Bower, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**TABOR, Presiding Judge.**

Owners of farmland south of 420th Street near Cylinder, Iowa, appeal the district court's dismissal of their petition for writ of mandamus seeking to compel the Palo Alto County Board of Supervisors to follow the procedures in Iowa Code chapter 468, subchapter V (2013). The landowners are upset about the board's decision to install culverts under the county road; the culverts will discharge water onto their land. The district court decided the statutes cited by the landowners did not impose any "explicit duties" on the county board and, accordingly, granted the board's motion for summary judgment. Because we concur with the district court's statutory interpretation, we affirm the dismissal of the landowners' mandamus action.

## I. Facts and Prior Proceedings

After heavy rains in June 2014, landowner Jim Crawford contacted members of the county board of supervisors to complain that 420th Street was "damming up water" on his property north of the road. According to affidavits from board members, records before 1914 show "two small bridges or wooden culverts in place to allow the natural flow of water to pass through the county road, now called 420th Street." But at some point in time, "those two bridges or wooden culverts were removed and the height of the road was increased." According to the supervisors' affidavits, "The road thereafter has acted as a dam or dike."

On June 17, 2014, Crawford appeared before the board to discuss his drainage complaint. The board's drainage attorney, Jim Hudson, advised "roads cannot be dams and surface water must be able to take its natural course."

Attorney Hudson recommended the board hire an engineer to review the matter. On June 24, 2014, the board voted to hire Donald D. Etler, a senior project manager with Bolton & Menk, Inc., to review Crawford's drainage concerns.

In an August 11, 2014 letter to county engineer Joel Fantz, Etler offered the following opinion:

> [W]e do not think it is in the public interest for the county to allow the road grade to function as a levee if that function harms the lands located on the upstream side of the road. It is our opinion that there is a material harm resulting from increased backwater elevations during more frequent lower-stage flood flows. It is our opinion that the damages can be materiality reduced by the placement of culverts through the road grade so that excess surface runoff from the local watershed, and some of the increased channel overflow caused by the higher backwater can be allowed to pass through the road grade in its natural course downstream over the floodplain.

Etler recommended installing at least two culverts under 420th Street to allow the natural flow of surface water. He cautioned that "the owners of the land south of the road will need to make adjustments to manage the additional water that will once again flow onto their property."

The owners of the land south of the road are Judy Knoer, Linda Koppie, Carolyn Larsen, and Glen Moser[1]—the petitioners in this mandamus action. The petitioners[2] jointly own 355 acres of land. On September 11, 2014, Koppie and the attorney of the southside landowners met informally with several of the supervisors, as well as landowner Crawford, drainage attorney Hudson, and county engineer Fantz. The southside landowners objected to the proposal to

---

[1] Due to Glen Moser's death, the court's March 2015 order substituted Kathy Hiatt, executor of his estate, as the successor party.
[2] For clarity, we will refer to the petitioners as the southside landowners throughout this opinion.

install culverts under 420th Street. At the meeting, Hudson and Fantz disagreed about the statutes governing the situation. Fantz believed section 468.600 applied to the construction of the culverts, while Hudson insisted it did not, claiming the matter was governed by Iowa Code section 314.7, which addresses in part the natural drainage of surface waters across highways. *See* Iowa Code § 468.600 ("drainage through land of others—application").

On September 16, 2014, the board met and voted to install one culvert—consisting of a thirty-six inch pipe, six inches below the flow line of the property on the south side of 420th Street. Three supervisors voted to approve the motion, one voted against the motion, and one abstained.

On October 6, 2014, the southside landowners filed a petition for writ of mandamus and injunctive relief against the board of supervisors. The petition alleged the board "failed to follow the requirements of Iowa Code § 468.600 et seq. as it was obligated to do" and as a result, "none of the other upstream or downstream landowners that might be affected" by the culvert installation have received notice or an opportunity to be heard.

On November 24, 2014, county engineer Fantz wrote a letter to the board of supervisors, disagreeing with the proposal to install culverts under 420th Street. He expressed his view as follows:

> It is my understanding that Jim Crawford, through the board of supervisors, is still requesting culverts through 420th Street in order to secure a better drainage outlet for his farmland across from the Koppie/Knoer/Glen Moser property. There are two avenues within the Iowa Code clearly open to him. As a member of Drainage District 60, he may pursue drainage across the lands of others under 468.63: Drainage Subdistrict. Additionally, he may pursue drainage through the road right of way and across the Kopple/Knoer/Glen Moser property by making an application under

the Individual Drainage Rights portion of the code 468.600: Drainage Through the Land of Others – Application.

The next day, November 25, 2014, the board met again and voted to install two culverts under 420th Street to provide for the flow of the surface water, as recommended by engineer Etler.

As to the southside landowners' mandamus petition, on December 22, 2014, the board filed a motion for summary judgment; a statement of undisputed material facts, accompanied by affidavits; and a memorandum of authorities. The memorandum concluded:

> Section 314.7 imposes a mandatory duty upon the Palo Alto County Board of Supervisors to place openings (culverts) in the roadbed of 420th Street to allow surface water to escape in its natural course. Section 468.600 et seq. does not pertain to culverts in a roadbed. Section 468.600 et seq. does not impose any duty on the Palo Alto County Board of Supervisors in regard to it placing culverts in the roadbed of 420th Street.

The southside landowners resisted the summary judgment motion, alleging the board's own affidavits confirmed the existence of disputed material facts. The district court granted the board's motion for summary judgment.[3] The southside landowners appeal, seeking a reversal of the summary judgment ruling and a remand so the parties may complete discovery.

## II.     Scope and Standards of Review

Mandamus is an equitable action generally reviewed de novo. *Den Hartog v. City of Waterloo*, 847 N.W.2d 459, 461 (Iowa 2014). But our review of a summary judgment ruling in a case filed in equity is for errors of law. *Koenigs*

---

[3] The district court decided the southside landowners' request for temporary injunctive relief was moot because the board agreed to stay the construction of the culverts until the present case was resolved.

*v. Mitchell Cty. Bd. of Supervisors*, 659 N.W.2d 589, 592 (Iowa 2003). We will uphold the grant of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3); see *Koenigs*, 659 N.W.2d at 592.

### III.    Analysis

The purpose of bringing a mandamus action is to obtain an order commanding an entity to do an act, the performance of which the law enjoins as a duty. Iowa Code § 661.1. The action cannot be used to establish rights but only to enforce existing rights. *Hewitt v. Ryan*, 356 N.W.2d 230, 233 (Iowa 1984). Our supreme court has described mandamus as "a drastic remedy to be applied only in exceptional circumstances." *Id.* The court will not issue the writ in "doubtful cases" but only where the right involved and the duty sought to be enforced are clear and certain. *Headid v. Rodman*, 179 N.W.2d 767, 770 (Iowa 1970).

In this case, the southside landowners brought their mandamus action to require the board of supervisors to follow the requirements of Iowa Code sections 468.600 through 468.634. The district court concluded the southside landowners could not "sustain a cause of action for a writ of mandamus" because "Iowa Code section 468.600 and the subsequent statutes within chapter 468, subchapter V do not impose any explicit duties on the Board." We agree with the district court's interpretation of those drainage statutes. *See generally Postell v. Am. Family Mut. Ins. Co.*, 823 N.W.2d 35, 49 (Iowa 2012) (discussing statutory

interpretation and judicial goal of determining intent from the words chosen by the legislature).

Our analysis starts with the general framework of chapter 468, which "governs the creation and function of drainage districts." *Hardin Cty. Drainage Dist. 55 v. Union Pac. R.R. Co.*, 826 N.W.2d 507, 510 (Iowa 2013). Subchapter V is entitled "Individual Drainage Rights" and opens with the following provision:

> When the owner of any land desires to construct any levee, open ditch, tile or other underground drain, for agricultural or mining purposes, or for the purposes of securing more complete drainage or a better outlet, across the lands of others or across the right-of-way of a railroad or highway, or when two or more landowners desire to construct a drain to serve their lands, the landowner or landowners may file with the [county] auditor . . . an application in writing, setting forth a description of the land . . . through which the landowner is desirous of constructing any such levee, ditch, or drain, the starting point, route, terminus, character, size, and depth thereof. The auditor shall collect a fee of one dollar for filing each application for a ditch or drain.

Iowa Code § 468.600.

This statute allows a private landowner who wishes to construct a levee, ditch, tile, or other underground drain to file an application with the county auditor describing the property where the construction would occur. That application triggers notice and hearing requirements for the county auditor and county board of supervisors, and the subsequent process allows filing of compensation claims by other landowners who allege damage from the proposed construction. *See id.* §§ 468.601—468.605. If the supervisors find the proposed levee, ditch, or drain will be beneficial for sanitary, agricultural, or mining purposes, they shall determine where to locate the improvement, what connections can be made with it, and what compensation, "if any, shall be made" to other landowners. *Id.*

§ 468.606. In addition, the legislature specifically addressed the situation where "the course of the natural drainage of any land runs to a public highway." *Id.* § 468.622 (discussing a landowner's "drainage connection with highway").

The board asserts subchapter V does not apply here because the option of a private landowner to file an application with the county auditor does not impose a duty upon the supervisors. The board contends its decision to install culverts does not place it in the position of a private landowner who wishes to construct a drain within the scope of these statutes. The board further argues it had a mandatory duty under Iowa Code section 314.7 "to place openings (culverts or bridges) in 420th Street to maintain the natural flow of the surface water." That statute is located in the chapter governing "Administrative Provisions for Highways" and states:

> Officers, employees, and contractors in charge of improvement or maintenance work on any highway shall not cut down or injure any tree growing by the wayside which does not materially obstruct the highway, or tile drains, or interfere with the improvement or maintenance of the road, and which stands in front of any city lot, farmyard orchard or feed lot, or any ground reserved for any public use. *Nor shall they* destroy or injure reasonable ingress or egress to any property, or *turn the natural drainage of the surface water to the injury of adjoining owners*. It shall be their *duty to use strict diligence in draining the surface water from the public road in its natural channel*. To this end they may enter upon the adjoining lands for the purpose of removing from such natural channel obstructions that impede the flow of such water.

*Id.* § 314.7 (emphasis added).

On appeal, the southside landowners contend two mutually exclusive scenarios could be inferred from the record in this case:

> Scenario One. That, as advocated by the Plaintiffs (and the County Engineer), this case involves a request from a private landowner to the Board of Supervisors to alleviate flooding on his

land by draining it under a county road and onto other private property. If so, Iowa Code § 468.600 et seq. governs the Board's decision-making process; OR

Scenario Two. That, as advocated by the Board of Supervisors, the county road is "acting like a dam" and therefore the Board has a mandatory duty to install the culverts pursuant to Iowa Code § 314.7.

They maintain the district court prematurely picked the second scenario and wrongly granted summary judgment in the face of unresolved factual issues. In their view, genuine issues of material fact exist regarding the applicability of the two statutes.

We disagree with the appellants' characterization of the district court's ruling. The district court did not perceive a bilateral choice between applying section 468.600 and applying section 314.7. Instead, the district court determined the landowners could not prevail in their mandamus action because section 468.600 and the following provisions did not "impose a direct duty on the Palo Alto County Board of Supervisors to conduct their affairs in a particular way." The district court did not decide section 314.7 imposed a mandatory duty on the board to install culverts but rather observed the board exercised its own "discretion in determining that the failure to install culverts under 420th Street would breach a mandatory duty owed by the board to place openings under roadways to allow surface water to continue to drain in its natural course." The court found the board conducted a thorough investigation of the drainage issue based on scientific reports and on advice from its legal counsel before voting to install culverts. The district court aptly noted a writ of mandamus cannot be used to interfere with a county board of supervisors' reasonable exercise of discretion. *See Bellon v. Monroe Cty.*, 577 N.W.2d 877, 879 (Iowa Ct. App. 1998).

The county supervisors may have had the discretion to advise Crawford to file an application with the auditor under section 468.600—as suggested in the letter from the county engineer—but the southside landowners point to no statute requiring Crawford's drainage issue be handled in that manner. Moreover, Crawford did not express any desire, as a private landowner, to construct his own tile or underground drain, which is the action contemplated by section 468.600. Instead, he complained to the board about the county's road acting as a dam. An independent engineering study recommended culverts under the county road as the solution to the road acting as a dam. Our supreme court has decided, concerning the terminology of chapter 468, "drainage tile is *not* a culvert." *Hardin Cty.,* 826 N.W.2d at 514.

Nothing in chapter 468, subchapter V required the board to provide notice to county residents or hold additional hearings in the absence of a private landowner's application under section 468.600 filed with the auditor. We cannot write provisions into a statute in the guise of interpretation. *See Clarke Cnty. Reservoir Comm'n v. Abbott,* 862 N.W.2d 166, 177 (Iowa 2015). As the district court determined, the mandamus petition did not cite any provisions identifying "a clear duty" owed by the board. Accordingly, the court properly granted summary judgment.

**AFFIRMED.**